1

2

3

4                          UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    JOSE VACA MARTINEZ,                    Case No. 13-cv-03399-SI

         Petitioner,

8
                                           ORDER DENYING PETITION FOR
         v.                                WRIT OF HABEAS CORPUS AND
9                                          DENYING CERTIFICATE OF
                                           APPEALABILITY
10   TIM PEREZ, Warden,

         Respondent.

11

12

13          Petitioner Jose Vaca Martinez filed this petition for a writ of habeas corpus pursuant to 28

14   U.S.C. § 2254 challenging his 2010 conviction from the Alameda County Superior Court.

15   Petitioner claims that the state trial court violated his rights under the Sixth Amendment when it

16   denied his request for a continuance, made on the day of his sentencing, to locate and hire new

17   retained counsel.  This matter is now before the Court for consideration of the merits of the

18   petition.  For the reasons discussed below, the petition is DENIED.  The Court also DENIES a

19   certificate of appealability.

20

21                                    **BACKGROUND**

22          The California Court of Appeal summarized the relevant trial proceedings as follows:

23          Following a preliminary hearing at which Jane Doe testified, an information was
            filed in Alameda County Superior Court charging defendant Jose Vaca Martinez
24          with two counts of sexual penetration of a child under the age of 10 (counts 1 and 4)
            and two counts of lewd acts on a child under the age of 14 (counts 2 and 3).  (Pen.
25          Code, §§ 288.7, subd. (b), 288, subd. (a).)

26          Trial commenced June 22, 2010, with pretrial motions and jury selection.  On June
            24, 2010, defendant indicated through a Spanish interpreter that he was "under [the]
27          impression" that he would have a new attorney at trial.  The court ruled that a
            substitution of attorney would not be allowed unless the new attorney was ready to
28          go forward with the jury trial.  The prosecutor stated that the 14-year offer remained

United States District Court
Northern District of California

open, there was no new offer, and the offer of 14 years would expire at 2:00 p.m. (when the jury panel was due to return). At 2:00 p.m., a resolution was reached. Defendant signed a plea waiver form with the assistance of counsel and a Spanish-speaking translator.

Pursuant to the negotiated disposition, counts 1 and 4 were dismissed in exchange for defendant's pleas of no contest to counts 2 and 3. The parties agreed to an aggregate prison sentence of fourteen years, consisting of the upper term of eight years on count 2 and the middle term of six years on count 3. Defendant also agreed to waive his right to appeal, among other rights. At the change of plea hearing, defendant and trial counsel both affirmed that the two had discussed the charges, the defenses, and defendant's rights. Defendant was informed that as a result of his plea, "[Y]ou will be sent to State Prison for 14 years." Defendant affirmed that he had not been threatened into entering his plea. He affirmed that he had initialed the plea waiver form and in fact gave up his constitutional rights. Asked if he had any questions for his attorney, defendant responded, "Maybe he can tell you about any question. I don't have any question in mind right now." Defendant entered his pleas of no contest and the court accepted them, finding that defendant "understands the nature of the crime charged, the possible penalties and consequences of a conviction; that he has freely, intelligently, and voluntarily waived his constitutional rights. And . . . there is a factual basis for these pleas . . . ." Counts 1 and 4 were dismissed as promised.

On August 4, 2010, the date set for sentencing, defense counsel gave the court a letter from defendant, stating: "I would like to address the court before I go any further: [¶] I would like to inform the judge that I do not wish to take the deal of 14 years in prison. [¶] It was never fully explained to me that I was signing a paper agreeing to the prison term of 14 years. I am 73 years old and that would be the equivalent of a life sentence for me at my age. The attorney I have now has never fully explained my options. I was never in the 11 months visited by my attorney, nor was I given an interpreter to help explain what was going on. I feel I need to change my plea to: 'not guilty.' I would like to put this case off so I can attempt to find a new attorney who I feel I can fully trust and one I can fully understand."

At the hearing, defendant's attorney stated that he had been contacted by *Mrs*. Martinez who had advised him in person 'that in discussing the case and the disposition with her husband, *she* wished to hire another attorney and wished to withdraw the plea that we had entered with Mr. Martinez.' (Italics added.) Trial counsel had advised Mrs. Martinez that she would have to contact an attorney, have that attorney in court, and make the request. Trial counsel advised the court that Mrs. Martinez had seen an attorney, but he was asking "for all of the money for the fee up front," and she could not afford that. He, trial counsel, was asking for a 45-day continuance "on her behalf."

Trial counsel also advised the court that defendant "has quasi alleged maybe some IAC . . . ." Mrs. Martinez had informed him that she felt defendant "was forced or coerced into entering the plea." Trial counsel advised the court that Mr. Martinez told the probation department that he did not understand fully what he was doing at the time of the plea. Although trial counsel knew that he "went through items and we used a Spanish interpreter that fully explained to Mr. Martinez that this is an actually written waiver that has become part of the file itself," since Mr. Martinez had never admitted wrongdoing, counsel was asking that the court continue the matter so that defendant or his wife could either hire a new attorney or have defendant referred to the public defender "to see if there's any basis for his motion [] to withdraw his plea." The prosecutor objected to any continuance because Jane Doe and her mother were both in court that day and the mother wished to address

2

the court at sentencing.  She also argued that there was no legal justification for withdrawing the plea: "Everything here was done in the open in terms of the defendant's plea.  And I think the plea transcript would show that he made a knowing and voluntary waiver and entered into a plea negotiation."  Trial counsel countered that he had no doubt he had proceeded properly in this case during the three days of trial before the court, but that if defendant wanted to withdraw his plea, "maybe we do need to get a transcript to have somebody else look at this just to see if anything that was done either by myself or whoever was improper."

The trial judge denied the request for a continuance, observing that he had been present when defendant changed his plea, and that defendant was fully assisted by a Spanish interpreter.  He stated, "If I felt that there was any such lack of understanding, I never would have accepted the plea. . . . [¶] I believe that this is just another means of forestalling the inevitable."

After Jane Doe's mother made a statement in open court, defendant was sentenced in accordance with his plea agreement to 14 years in state prison.

Dkt. 8, Ex. 6 at 2-3, (footnote omitted); *see* CT 101 (petitioner's letter).

On January 31, 2012, the California Court of Appeal affirmed the judgment of conviction.

Ex. 6.  The appellate court held that the trial court properly exercised its discretion when it denied

petitioner's request for a continuance in order to obtain substitute counsel.  The court held,

The *Keshishian* court instructed that "under the applicable test for retained counsel, the court should 'balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution.' [Citation.]  In doing so, the court 'must exercise its discretion reasonably; "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality."' [Citations.]"  (*Keshishian*, *supra*, 162 Cal.App.4th at p. 429.) . . .

Like the defendant's showing of good cause in *Keshishian,* the defendant's showing in this case also falls short of what is required.  In this case, the only basis for a continuance attributable to defendant himself was in his letter to the court.  In that letter, he informed the court that he did not "wish to take the deal of 14 years in prison," indicating, at a minimum, that he understood he had a deal for 14 years in state prison.  He then claimed it was "never fully explained" to him that he "was signing a paper agreeing to the prison term of 14 years," although he understood that at his age of 73 "that would be the equivalent of a life sentence."  He also claimed that his retained counsel had "never fully explained [his] options," had never visited him in jail, and that he was never "given an interpreter to help explain what was going on."  He said he "would like to put this case off so I can *attempt to find* a new attorney who I feel I can fully trust and one I can fully understand."  (Italics added.)

On August 4, 2010, when the court received this missive, defendant had been represented by retained counsel since at least the preliminary hearing on March 19, 2010.  Counsel may or may not have visited him in jail, but he had appeared in court with defendant or on his behalf no fewer than 11 times, including three trial days, between March 19 and June 24, 2010.  He was presumably familiar with the case and prepared for trial. On June 24, 2010, the final day defendant had a choice between taking the prosecutor's offered plea bargain of 14 years or proceeding to trial by jury, defendant for the first time indicated through a Spanish interpreter that

he was "under [the] impression" he would have a new attorney at trial.  The trial court ruled that a substitution of attorney would not be allowed *unless* the new attorney was ready to go forward with the jury trial.

The court made it clear it would not allow the substitution of an attorney who was unprepared to go forward, and defendant had 42 days between his plea and his sentencing date to (1) discharge his attorney, (2) hire new counsel, or (3) ask for a continuance of the sentencing date.  Yet, he did none of those things.  In fact, like the defendant in *Keshishian,* he had neither identified nor retained new counsel.  Nor did defendant ever ask to discharge his attorney on the sentencing date.

Substantial evidence in the appellate record of court appearances and the change of plea hearing support the trial court's observations that defendant was at all critical times assisted by an interpreter and that defendant betrayed no confusion about the plea bargain at the time of the plea.  The same judge had reviewed the signed change of plea form and questioned defendant about the change of plea and agreed sentence of 14 years.  In light of the fact that the victim and her mother were present for the purpose of testifying at the sentencing hearing, that defendant's letter contained at least one manifest untruth (about interpreter assistance), and that defendant had a prior history of wanting to postpone the inevitable by raising the possibility of new counsel, the court did not abuse its discretion in denying a continuance on the basis of defendant's letter.  As in *Keshishian,* the trial court here acted well within its discretion in deciding that defendant's last-minute attempt to begin looking for new retained counsel and postponing the sentencing hearing did not outweigh the court's interest in proceeding with a previously set sentencing hearing, when the victim and her mother were present in order to exercise their state constitutional rights to be heard (art. 1, § 28, subd. (b)(8)), and for closure.  (Art. 1, § 28, subds.(a)(6) & (b)(9).)

Nor did trial counsel's comments add anything to the good cause calculus.  On the contrary, those comments showed that the impetus for substitution of new counsel and plea withdrawal came from defendant's *wife,* not defendant himself, and that retained counsel was making the request for a 45–day continuance on *her* behalf.  Furthermore, to the extent that trial counsel also advised the court that defendant had "quasi alleged maybe some" ineffective assistance of counsel, those allegations reflected *Mrs. Martinez's* feeling that defendant "was forced or coerced into entering the plea."  In any event, it was not the court's prerogative to inquire, *Marsden*-style, about retained counsel's failings.  (*Munoz, supra,* 138 Cal.App.4th at p. 866; *Hernandez, supra,* 139 Cal.App.4th at pp. 108109.)  The balance of trial counsel's comments supported the trial court's view that defendant had been adequately counseled by his attorney, with the assistance of a Spanish interpreter, about the contents of the plea waiver form and the parameters of the plea bargain.

Finally, nothing in the record demonstrates that defendant was indigent, or that *he* was interested in substituting appointed counsel for retained counsel.  Trial counsel's suggestion that the matter be continued so that defendant could be referred to the public defender for a consultation on whether "there's any basis for his motion [ ] to withdraw his plea" appears, on this record, to be wholly his own.  In short, the record supports the trial court's implied finding that the ends of justice would not have been well served by a 45–day continuance of the sentencing hearing.  No abuse of discretion appears.

Ex. 6 at 6-8, (footnote omitted, emphases in original.)

4

1    On April 25, 2012, the California Supreme Court denied review.  Ex. 8.  On July 22, 2013,

2    petitioner filed a timely petition in this Court.

3

4                              **JURISDICTION AND VENUE**

5    This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C.

6    §2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged conviction

7    occurred in Alameda County, California, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

8

9                                    **EXHAUSTION**

10   Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings

11   either the fact or length of their confinement are required first to exhaust state judicial remedies,

12   either on direct appeal or through collateral proceedings, by presenting the highest state court

13   available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

14   a federal court.  *See* 28 U.S.C. § 2254(b), (c).

15   On direct appeal, petitioner challenged the trial court's denial of the continuance of

16   sentencing as unreasonable and a violation of his rights under the Sixth Amendment.  The

17   government does not dispute that the state judicial remedies were exhausted for this claim.  The

18   government contends, and the Court agrees, that petitioner did not present particular arguments to

19   the state courts.  Where that is the case, the Court has noted as such in this order, and has also

20   addressed those arguments on the merits.

21

22                              **STANDARD OF REVIEW**

23   This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

24   custody pursuant to the judgment of a State court only on the ground that he is in custody in

25   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

26   petition may not be granted with respect to any claim that was adjudicated on the merits in state

27   court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary

28   to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *Id*. at 409. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough v. Alvarado*, 541 U.S 652, 664 (2004).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent.  *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1995).  "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law."  *Luna v. Cambra*, 306 F.3d 954, 960 9th Cir. 2002) (internal quotation marks and citation omitted), amended by 311 F.3d 928 (9th Cir. 2002).

The Court reviews the "last reasoned decision" addressing the issue by a state court.  *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  The California Court of Appeal's affirmance on direct appeal is the last reasoned opinion relevant to petitioner's claims.

United States District Court
Northern District of California

**DISCUSSION**

"To establish a Sixth Amendment violation based on the denial of a motion to continue, [a petitioner] must show that the trial court abused its discretion through an 'unreasoning and arbitrary' insistence upon expeditiousness in the face of a justifiable request for a delay.'" *Houston v. Schomig*, 533 F.3d 1076, 1079 (9th Cir. 2008) (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).  In *Morris v. Slappy*, 461 U.S. 1 (1983), the Supreme Court held that a state trial court did not violate a criminal defendant's Sixth Amendment right to counsel by denying a request for a trial continuance.  The defendant had been represented by a deputy public defender until shortly before trial, when the deputy public defender was hospitalized for surgery.  Six days before the scheduled trial date, a senior public defender was assigned to represent the defendant. On the third day of trial, the defendant requested a continuance of the trial until his first attorney had recovered and could represent him again. On habeas review, the Ninth Circuit held that the trial judge violated defendant's Sixth Amendment rights by arbitrarily denying the continuance.

The Supreme Court reversed, stating that "[b]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11-12.  In holding that the trial court had not abused its discretion, the Supreme Court noted that the defendant made the request for a continuance on the third day of trial, that his replacement counsel stated that he was fully prepared and ready for trial, and that based upon the record, "it could reasonably have concluded that respondent's belated requests to be represented by [his first attorney] were not made in good faith but were a transparent ploy for delay." *Id*. at 13. The *Morris* court also found that the Ninth Circuit had erred by failing to take into account the interest of the victim in not testifying at multiple trials.  *Id*. at 14.  "Of course, inconvenience and embarrassment to witnesses cannot justify failing to enforce constitutional rights of an accused: when prejudicial error is made that clearly impairs a defendant's constitutional rights, the burden of a new trial must be borne by the prosecution, the courts, and the witnesses; the Constitution permits nothing less.  But in the administration of criminal justice, courts may not ignore the concerns of victims." *Id*.

United States District Court
Northern District of California

In *Miller v. Blackletter*, 525 F.3d 890, 895 (9th Cir. 2008), the Ninth Circuit held that a trial judge's decision to deny appointed counsel's motion to withdraw and to continue the trial date to allow the defendant to retain a private attorney was not contrary to *Morris* and other clearly established Supreme Court precedent.  The Ninth Circuit considered "whether the trial judge's decision was an unreasonable exercise of its discretion to balance Miller's right to his chosen counsel against concerns of fairness and scheduling."  *Miller*, 525 F.3d at 896.  The Ninth Circuit noted that at the time counsel moved to withdraw and to postpone trial, the defendant had not yet retained substitute counsel.  *Id*. at 897.  In contrast to other cases in which courts had found violations of the right to counsel of choice where replacement counsel were willing and able to be prepared,

> [i]n this case, however, Miller sought a thirty-day continuance during which he hoped to search for and retain a new lawyer with the funds his father had belatedly offered to provide.  At the time of the motions, no such attorney had been retained.  While Miller's father had placed a call to Hartstrom [potential replacement counsel], there was nothing to suggest that Hartstrom would be willing or available to take Miller's case.  Moreover, it was unclear how much time a new attorney, once hired, would have needed to prepare for Miller's trial.  Although Augur [appointed counsel] speculated that preparation would take approximately one month, other commitments in the new attorney's schedule may have made such a timeline unrealistic.

*Id*. at 896.  The Ninth Circuit also found significant the timing of counsel's motions to withdraw and to postpone trial.  "Miller was indicted sixty-eight days before trial, and we are satisfied that such time provided him with ample opportunity to arrange for an alternative to court-appointed counsel by whatever means he saw fit . . . ."  *Id*. at 897.  The court also noted that "Miller's attorney did not move to withdraw and to continue the trial date until the morning trial was set to begin.  The Supreme Court has held that 'only [a trial court's] unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay' violates the Sixth Amendment."  *Id*. (quoting *Morris*, 461 U.S. at 11-12); *see also Houston v. Schomig*, 533 F.3d at 1079 (holding petitioner's Sixth Amendment rights were not violated by the denial of a motion for continuance to substitute retained counsel for appointed counsel made four days before trial because the court "confirmed that [appointed] counsel was able to proceed to trial, evaluated Houston's diligence in

timely retaining private counsel, and weighed the potential impact a continuance may have had on the victims and witnesses."); *compare Bradley v. Henry*, 510 F.3d 1093, 1098-99 (9th Cir. 2007) (en banc) (granting habeas relief and holding that the petitioner's Sixth Amendment rights were violated three times, including by denying a motion to substitute counsel of her choice when proposed substitute counsel assured the court that counsel would be ready by the date appointed for trial).

The Court concludes that the California Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  As an initial matter, the Court notes that petitioner has not identified any Supreme Court case involving similar facts which holds that it would be an abuse of discretion to deny a request for a continuance made the day of sentencing to allow the defendant to "attempt" to find another attorney to represent him. *Cf. Ferguson v. Schwarzenegger*, 267 Fed. Appx. 707, 709 (9th Cir. 2008) (unpublished disposition) (affirming denial of habeas petition alleging almost identical Sixth Amendment violation: "Ferguson has not cited (nor has this court located) any Supreme Court precedent which holds (or even suggests) that it would be an abuse of discretion to deny a request to continue sentencing made for the first time at the sentencing hearing where the defendant wanted to substitute in an attorney who was seriously ill in the hospital and who had not indicated that he was either able or willing to represent the defendant.").

Petitioner argues that the denial of a 45 day continuance of the sentencing was unreasonable because "the time for a new attorney to prepare for sentencing would have been minimal and there is no compelling evidence that a continuance would have otherwise affected the administration of justice or the court's management of the calendar."   Dkt. 1-1 at 23:15-16.[1]

_____

[1]  To the extent petitioner contends that the state trial court needed to cite a "compelling" reason to deny the continuance, petitioner is mistaken.  The cases that petitioner cites for the proposition that a court must have a "compelling purpose" to grant or deny a continuance have been overruled. *See United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir. 1999) ("*Morris* does not require either the defendant or the government to establish a compelling reason to obtain a continuance.  To the extent that *United States v. Lillie,* 989 F.2d 1054, 1056 (9th Cir. 1993), and *United States v. D'Amore,* 56 F.3d 1202 [9th Cir. 1995], require a trial court to find a compelling reason before granting or denying a continuance, they are overruled.").  When reviewing a district court's ruling granting or denying a motion for a continuance "the applicable standard of review is abuse of discretion." *Id.* at 1144-45.

1    Petitioner also asserts that there are no facts in the record that suggest that he was deliberately

2    acting in a dilatory manner by requesting a continuance.

3          The Court disagrees and finds that the record supports the appellate court's conclusion that

4    the trial judge acted within his broad discretion in denying petitioner's motion for a continuance to

5    attempt to retain new counsel. As the appellate court noted, petitioner had previously been

6    informed − in response to petitioner stating, on the third day of pretrial and trial proceedings and

7    the same day trial was set to begin, that he was "under the impression" that he would be getting a

8    new lawyer for trial − that a substitution of attorney would not be permitted unless new counsel

9    was prepared to go forward with trial.  Petitioner had 42 days between the entry of his plea and the

10   day of his sentencing in which to discharge his attorney, request a continuance, or hire new

11   counsel.  The appellate court found it significant that the request for a continuance was first made

12   the day of the sentencing, and that the request was to allow petitioner to "attempt" to find a new

13   lawyer.  Thus, the trial court could reasonably have found that a continuance of the sentencing

14   would be disruptive because it was not clear that petitioner would be able to locate and hire a new

15   attorney within 45 days, much less that the new attorney would be able to prepare for sentencing

16   or file any motions within 45 days.  The state court also reasonably considered the impact of a

17   continuance on the victim, noting that the victim and her mother had appeared at the sentencing so

18   that the mother could provide an impact statement.  *See Morris*, 461 U.S. at 13-15 (acknowledging

19   that appropriate factors to consider include administration of justice, difficulty in assembling

20   witnesses, bad faith delaying tactics, and victims' concerns).

21         Petitioner asserts that the appellate court applied the wrong legal standard by analyzing

22   whether there was "good cause" for the continuance, and by viewing this as a "continuance" case

23   rather than a "counsel of choice" case.[2]  However, while the appellate court examined whether

24   petitioner had demonstrated "good cause" for the continuance under California Penal Code

25

26

27         [2]  The Court notes that petitioner's state appellate attorney, who also represents petitioner
     in this habeas proceeding, argued on direct appeal that "the court abused its discretion when it
28   denied the continuance, as requested by Appellant before he was convicted and sentenced, 'good
     cause' within section 1050 having been shown."  Dkt. 8, Ex. 3 at 19.

United States District Court
Northern District of California

§ 1050,[3] the appellate court also recognized petitioner's argument that the trial court's denial of the continuance effectively denied him the right to discharge his retained attorney, and the court also acknowledged that a defendant may discharge retained counsel at any time without cause. Dkt. 8, Ex. 6 at 4-5. The appellate court also stated, consistent with Supreme Court precedent, that the trial court may deny a request for a continuance if it was untimely and would disrupt "the orderly processes of justice." *Id.* at 5; *see also id.* at 6 (stating that "the court should 'balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution.' In so doing, the court must 'exercise its discretion reasonably: a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'") (internal quotation marks and citations omitted).

Petitioner also contends that the California Court of Appeal's decision was "both contrary to, and involved an unreasonable application of, well-established Supreme Court law, because in evaluating petitioner's Sixth Amendment right to counsel of his choice claim, the state court only considered whether there was 'good cause' for a continuance and not the factors relevant to representation by an attorney of one's choice put forth by the Supreme Court in *Wheat v. United States*, 486 U.S. 153, 159 (1988)." Dkt. 1 at 8:24-9:1. In *Wheat*, the Supreme Court examined "the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy." *Wheat*, 486 U.S. at 159. The Court held that the district court did not err in declining to accept a defendant's waiver of his right to conflict-free representation and in refusing to permit his proposed substitution of attorney. The Court stated that, "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." *Wheat*, 486 U.S. at 159.

> Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court. Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to

---

[3]   California Penal Code § 1050 sets forth the procedures for continuances in criminal cases, and states, *inter alia*, that "[c]ontinuances shall be granted only upon a showing of good cause." Cal. Pen. Code § 1050(c).

> represent the defendant. Nor may a defendant insist on the counsel
> of an attorney who has a previous or ongoing relationship with an
> opposing party, even when the opposing party is the Government.

*Id*. Petitioner contends that the state appellate court should have considered these factors when reviewing the trial court's decision to deny the request for continuance.

*Wheat* is distinguishable in several respects. First, *Wheat* did not involve a motion for continuance, and the only question presented was whether the district court abused its discretion in refusing to accept a defendant's waiver of a conflict of interest. Second, unlike the defendant in *Wheat*, petitioner did not actually request a substitution of counsel or identify a particular new attorney he wanted to retain when he requested the continuance. Instead, petitioner requested a continuance of his sentencing in order to "attempt" to retain a different attorney. As such, the state court could not have applied the *Wheat* factors relevant to representation by counsel of choice when analyzing petitioner's request. Accordingly, because *Wheat* was not relevant to the particular issues presented by petitioner's case, the state appellate court's failure to discuss *Wheat* or its factors was not contrary to or an unreasonable application of Supreme Court authority.[4]

Petitioner's reliance on *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), is similarly misplaced. In *Gonzalez-Lopez*, the Supreme Court held that a trial court's erroneous deprivation of a criminal defendant's choice of counsel constituted structural error warranting a reversal of his conviction.[5] *Gonzalez-Lopez*, 548 U.S. at 150. On review to the Supreme Court, there was no dispute that the trial court's denials of the motions were erroneous and violated the defendant's right to counsel of his choice, and the issue was whether that violation was subject to harmless error review. *Gonzalez-Lopez* is distinguishable because the defendant in that case sought to have a particular attorney represent him, and that case did not involve a request for a continuance. Further, the Court emphasized,

> We have recognized a trial court's wide latitude in balancing the
> right to counsel of choice against the needs of fairness, [*Wheat*], at
> 163–164, 108 S.Ct. 1692, and against the demands of its calendar,

---

[4] The Court notes that petitioner never cited *Wheat* in any of the state court briefs. *See* Dkt. 8, Ex. 3, 5, 7.

[5] The district court had improperly denied several motions for admission *pro hac vice* filed by an out-of-state lawyer whom the defendant wanted as his counsel. *Id*. at 143-44.

United States District Court
Northern District of California

United States District Court
Northern District of California

> *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, *supra*, at 160, 108 S.Ct. 1692. None of these limitations on the right to choose one's counsel is relevant here. This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel.

*Id*. at 152.

Finally, petitioner contends that the appellate court's opinion was based on an unreasonable determination of the facts under 28 U.S.C. §2254(d)(2).  Petitioner must show that the factual determinations were "'objectively unreasonable' in light of the record before the court." *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

Petitioner challenges a number of factual findings made by the appellate court.  First, petitioner asserts that the appellate court unreasonably concluded that petitioner understood at the time he entered his plea that he was agreeing to a 14 year sentence.  Petitioner contends that he first learned about the 14 year sentence when he met with his probation officer in preparation for the sentencing.  Relatedly, petitioner contends that it was erroneous to find that petitioner had 42 days prior to the sentencing hearing to retain substitute counsel because "he actually only had 15 days to hire a new attorney since the first time he learned that he would be sentenced to a total of 14 years in state prison was on July 20, when the probation officer informed him of the length of his sentence during his interview for the probation report."  Dkt. 1 at 10:15-19.

Petitioner has not demonstrated that the appellate court's factual determinations were objectively unreasonable in light of the record before that court.  The record showed that petitioner signed a written waiver of rights form that stated he would receive 14 years, Dkt. 8 at CT 87; he was advised three times during the plea colloquy that he would receive 14 years, *id*. at CT 90, 91,

92; and he stated he had no questions when asked by the trial court, *id*. at CT 95.  Petitioner's statements on the record at the time of his plea "carry a strong presumption of verity," and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Thus, the appellate court could reasonably conclude that petitioner understood on the day he entered his plea that he was agreeing to a sentence of 14 years, and that petitioner had 42 days between the entry of his plea and his sentencing date to find a different lawyer.

Second, petitioner challenges the appellate court's determination that his retained counsel was "presumably familiar with the case and prepared for trial."  Dkt. 8, Ex. 6 at 6.  Petitioner argues that this finding was unreasonable "because the court did not cite to any pretrial motions, investigations, or negotiations showing defense counsel was prepared, and the record did not provide any proof that defense counsel ever interviewed petitioner about the case during their court appearances."  Dkt. 1 at 9:17-22.  However, the appellate court's factual determination is supported by the fact that, as the appellate court noted, defense counsel had appeared on this case 11 times, and jury selection and motions had already been ongoing for three days when petitioner entered his plea.

Third, petitioner challenges the appellate court's finding that petitioner's letter to the court contained a "manifest untruth" by stating that petitioner had not been "given an interpreter to help explain what was going on."  Petitioner argues that "while petitioner may have been assisted in open court at the time of the plea, this does not mean that defense counsel's private discussions with petitioner about the trial process (before trial) and the consequences of a plea were made with an interpreter."  Dkt. 1 at 10:1-5.  The Court finds it was not unreasonable for the appellate court to conclude that petitioner's statement was untrue.  The record shows that petitioner had a certified Spanish interpreter at the time of the plea, Dkt. 8 at CT 89; his lawyer stated that he used an interpreter to explain the written waiver form, *id*. at CT 104; and the trial court stated that "every time [petitioner] appeared in my court, he was fully assisted by a Spanish interpreter."  *Id*. at CT 106.

Lastly, petitioner argues that the appellate court unreasonably found that "it was trial

United States District Court
Northern District of California

14

1    counsel, and not petitioner that requested the court consider appointing him an attorney, that it was

2    petitioner's wife that was alleging potential coercion and ineffective assistance and that petitioner

3    did not himself ask to discharge his attorney on the sentencing date." Dkt. 1 at 10:5-8.  Petitioner

4    contends that this finding was unreasonable because petitioner's wife and attorney were acting as

5    his agents and representatives when interacting with the court.  However, the record before the

6    court showed that the only request attributable to petitioner himself was the request to "put this

7    case off so I can attempt to find a new attorney." Dkt. 8 at CT 101.  Petitioner never discharged

8    his retained attorney, and he never asked the court to appoint him counsel.   Petitioner's counsel

9    suggested that the trial court either grant a continuance to allow petitioner and his wife to locate

10   new counsel, "or have Mr. Martinez referred to the public defender . . . ."  *Id.* at CT 104.[6]

11   Similarly, the record before the appellate court showed that it was petitioner's wife who contacted

12   his lawyer, and that "in discussing the case and the disposition with her husband, she wished to

13   hire another attorney and wished to withdraw the plea that we had entered with Mr. Martinez."  *Id.*

14   at CT 103.  On this record, the appellate court's factual determinations were not unreasonable.

21   ///

22   ///

23

---

24        [6]   Relatedly, petitioner contends that the trial court "should have appointed an attorney

25   pursuant to his request," and that the trial court should have conducted an inquiry into the
     "obvious conflict" between petitioner and his counsel.  As an initial matter, petitioner did not

26   present these arguments to the state courts.  *See* Dkt. 8, Ex. 3 & 5.  However, the record shows
     that petitioner did not request appointment of counsel; that suggestion came from petitioner's

27   attorney, and was presented as an alternative possibility.  With regard to the "obvious conflict"
     between petitioner and his lawyer, as the appellate court noted, "it was not the court's prerogative

28   to inquire, *Marsden*-style, about retained counsel's failings." Dkt. 8, Ex. 6 at 7.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  The Court also concludes that petitioner has not made a "substantial showing of the denial of a constitutional right," and thus DENIES a certificate of appealability.  28 U.S.C. § 2253(c)(2).  The clerk shall enter judgment in favor of respondent and close the file.


**IT IS SO ORDERED.**


Dated: November 3, 2015

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California